# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ROBERT IRWIN GWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 2:17-cv-2054-JDT-cgc |
| ) | |
| TAMIEKA COLLINS-WILLIAMS, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

### ORDER SEVERING CLAIMS, DISMISSING REMAINING CLAIMS, CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, NOTIFYING PLAINTIFF OF APPELLATE FILING FEE AND NOTIFYING PLAINTIFF OF RESTRICTIONS UNDER 28 U.S.C. § 1915(g)

On January 20, 2017, Plaintiff Robert Irwin Gwin, an inmate at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, filed *pro se* a complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court granted Gwin leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 11.) The Clerk shall record the Defendants as Tamieka Collins-Williams, Parole Officer with the State of Tennessee; former Shelby County Sheriff Bill Oldham; Nicky Jordan, Internal Affairs Officer at the Turner Center Industrial Complex (TCIX); Memphis Police Department (MPD) Detectives D. Dotson, L. Mobley, O. Edwards, B. Evans and J. Knowlton; Tennessee Department of Correction (TDOC) Assistant Commissioner Alisha Shoates-James; the Tennessee Board of Parole; Ned Ray McWherter, the deceased former Governor of Tennessee; Sandra E. Bowman, an Administrative

Secretary at TCIX; and TCIX Warden Kevin Genovese.[1]  Gwin appears to sue Collins-Williams, Shoates-James, Bowman, Jordan, Genovese, and the other MPD and TCIX employees in their individual capacities.[2]  (ECF 13 at PageID 97, 102; ECF 18 at PageID 133, 142 & 146.)  He sues Defendants McWherter and the Tennessee Board of Parole in their official capacities only.  (ECF No. 13 at PageID 97.) [3]

Gwin's original complaint is very difficult to follow.  He alleges that on October 6, 2016, he was present at TCIX to assist an inmate with a clemency petition.  (ECF No. 1 at PageID at 2-3.)  According to his complaint, Gwin is a paralegal and notary public.  (*Id*. at PageID 2.)  While meeting with the inmate, Gwin claims Defendant Jordan approached him and placed him under arrest on charges of criminal trespass and impersonation of a licensed professional.  (*Id.* at PageID 4.)  Gwin believes that Officer Jordan arrested him for being a convicted felon and on suspicion of smuggling contraband into the jail and appearing at the facility without the knowledge of his parole officer.  (*Id.* at PageID 5.)  The next day, Gwin's brother posted Gwin's bail.  (*Id.*)

---

[1] Gwin spells the Warden's name "Geneovese," but the correct spelling is Genovese.  *See* https://www.tn.gov/content/tn/correction/sp/state-prison-list/turney-center-industrial-complex.html.  The Clerk is DIRECTED to modify the docket to correct that misspelling.

[2] Gwin's initial complaint noted that suit against some of the Defendants was in both their individual and official capacities.  (ECF No. 1 at PageID 1.)  His later amended complaints, however, specify that he is suing the Defendants "Individually."  (ECF No. 18 at PageID 133.)

[3] Gwin also seeks to sue a "Jane or John Doe" defendant in his complaint and names a John Doe at the Hickman County Sheriff's Office in his second amended complaint.  Service of process cannot be made on an unidentified party.  The filing of a complaint against such "John Doe" defendants does not toll the running of the statute of limitation against that party.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).  The Clerk is directed to terminate the reference to the Jane or John Doe defendant on the docket.

On October 10, 2016, Gwin received a phone call from his parole officer, Defendant Collins-Williams, regarding the October 6 incident at the jail. (ECF No. 1 at PageID 2.) Gwin claims he forwarded Collins-Williams a copy of an email he had received from Defendant Bowman approving his visit to the jail.[4] (*Id.*) Nevertheless, Gwin states that a John Doe Assistant Commissioner signed a warrant for his arrest. (*Id.* at PageID 14.) (Gwin later asserts that this was Defendant Shoates-James. (ECF No. 13 at PageID 100.)) The same day, Defendant Dotson and eight armored MPD officers allegedly arrived at Gwin's apartment to arrest him for violating his parole based on his October 6 arrest. (ECF No. 1 at PageID 14.) The officers ordered Gwin out of his apartment but refused to produce the warrant for his arrest or the search of his apartment and car that followed. (*Id.*) Gwin alleges Defendants Dotson and Evans placed his apartment key under the door to his apartment, returned later, and "ransacked Plaintiff's apartment looking for a 'stash of cash.'" (*Id.* at PageID 15-16.) Gwin alleges the detectives took clothing, jewelry, and other property from his apartment. (*Id.* at PageID 16.) Gwin attempted to file a police report while he was incarcerated at the Shelby County Jail but was only permitted to file a grievance. (*Id.* at PageID 22.) Gwin's grievance was rejected as non-grievable because his claim was unrelated to the Jail itself. (*Id.*)

Gwin states that he has never faced the charges brought by Defendant Jordan for the October 6 arrest and that the charges have been dropped. (*Id.* at PageID 17-18.) He claims his initial detention by Jordan was unlawful and in violation of TDOC's policy on legal visits. (*Id.* at PageID 19-20.) He further claims that Defendant Oldham has continued to detain him since the

---

[4] Gwin claims that Defendant Bowman previously approved legal visits to the TCIX in April 2016 and in 2014. (ECF No. 1 at PageID 4.) He does not specify when he received approval for the visit on October 6, 2016.

October 10, 2016, arrest without a warrant, probable cause for the detention, or pending criminal charges. (*Id.* at PageID 21.) Gwin alleges that the arrest cost him his newly obtained job and apartment and that he suffers from anxiety, grief, and emotional pain and suffering from the initial October 6 arrest. (*Id.* at PageID 7.)

Gwin further asserts claims of wrongful arrest, false imprisonment, denial of due process and access to parolee grievance procedures, retaliation, and discrimination against Defendants Collins-Williams, Jordan, Oldham, Dotson, Mobley, Edwards, Evans, and Knowlton. (ECF No. 1 at PageID 24-25.) Gwin also asserts a due process claim related to his ongoing confinement against Defendant Shoates-James. (ECF No. 13 at PageID 106.) Gwin also appears to assert claims under the Open Meetings Act and the Tennessee Uniform Administrative Procedure Act. (ECF No. 1 at PageID 30-31.) Gwin seeks punitive damages and compensatory damages for the personal items that he alleges were stolen from his home. (*Id.* at PageID 32.)

Gwin also claims that he has twice requested that Defendant Collins-Williams initiate a parolee grievance against the Board of Parole employees who he alleges assisted the MPD in burglarizing his home on October 10, 2016, but she has not responded. (*Id.* at PageID 23.) He states this is a violation of his due-process rights under the Fourteenth Amendment and his right to grieve the State under the First Amendment. (*Id.*)

In his first amended complaint, Gwin clarifies his retaliation claim against Defendant Jordan. (ECF No. 6.) He alleges Jordan retaliated against him for providing notary services and legal assistance to prison inmates, which he states is "protected conduct." (*Id.* at PageID 58-59.)

In his second amended complaint, Gwin alleges that Governor McWherter unconstitutionally revoked the commutation of his 1973 sentence for first-degree murder, which McWherter's predecessor had commuted in 1979. (ECF No. 13 at PageID at 99-100.) He asserts

4

without support that this claim accrued when he was arrested on October 10, 2016. (*Id.* at PageID 100.) Gwin also alleges that the Tennessee Board of Parole falsified government records pertaining to his commutation in 1979 and vaguely states the Board violated his rights. (*Id.* at PageID 103-04, 107.) Gwin also asserts state-law claims for intentional infliction of emotional distress against Defendants Bowman and Jordan. (*Id.* at PageID 100-102.)

In his third amended complaint, Gwin alleges that Warden Genovese failed to follow proper procedures for allowing Gwin to visit an inmate at the TCIX. (ECF No. 18 at PageID 145.) Gwin further alleges that Genovese conspired with Defendants Jordan and Bowman, along with Gwin's parole officer Defendant Collins-Williams, to interfere with Gwin's right to vote. (*Id.* at PageID 134, 145, 151.) Gwin also adds a state-law claim against Defendant Jordan for libel and slander and alleges that Jordan deprived Gwin of personal property during his October 6 arrest. (*Id.* at PageID 137, 143.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)

(quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Gwin filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Gwin's primary claims relate to his arrest on October 6, 2016, his resulting parole violation, and his arrest on that charge on October 10, 2016. In Gwin's second amended complaint, however,

6

he asserts additional claims against new Defendants. The proper joinder of parties in a single lawsuit is governed by Federal Rule of Civil Procedure 20.[5] Rule 20(a)(2) governs the joinder of defendants and provides that multiple defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

The Seventh Circuit has cogently explained how Rule 20(a)(2) applies to prisoner plaintiffs:

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this [multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees–for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeal that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). . . .
>
> . . . .
>
> . . . . A buckshot complaint that would be rejected if filed by a free person–say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions–should be rejected if filed by a prisoner. . . .

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Dykes v. Benson*, No. 1:18-cv-664, 2018 WL 3708054, at *4 (W.D. Mich. Aug. 2, 2018) ("Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.").

---

[5] Once it is determined whether the parties in a case are properly joined under Rule 20, the joinder of multiple claims against any particular party is governed by Rule 18(a), which provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

7

Some of the claims in the second amended complaint are concerned with Gwin's sentence commutation from 1979 and revocation of commutation in 1994. Gwin also brings related claims against the Tennessee Board of Parole. Those additional claims are misjoined in this action because they are completely unrelated to Gwin's various claims related to his October 2016 arrests and seek relief against entirely unrelated Defendants.

Federal Rule of Civil Procedure 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." In this case, the Court finds that severing the claims raised against Defendants McWherter and the Tennessee Board of Parole in the second amended complaint and opening them as a new case is the appropriate remedy for the misjoinder.

Gwin seeks to hold Defendants responsible for injuries stemming from his arrest at TCIX and subsequent arrest for the violation of his parole. The Court analyzes each claim in turn.

*False Arrest and Wrongful Imprisonment*

The gravamen of Gwin's initial complaint is that Defendant Jordan violated his constitutional rights by falsely arresting him on October 6, 2016, at TCIX. He contends Defendants Collins-Williams, Shoates-James, Oldham, Dotson, Mobley, Edwards, Evans, and Knowlton are liable for the October 10, 2016, arrest for the violation of his parole. He contends that his continued detention is unlawful and not supported by probable cause.

None of Gwin's allegations state a plausible claim for relief. First, Gwin has no viable claim against Defendant Collins-Williams. Judges are absolutely immune from civil liability in the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir.

8

2014). As a parole officer, Collins-Williams enjoys a similar "quasi-judicial immunity" in the performance of judicial functions. *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012). A parole officer's decision whether a parolee has complied with the terms and conditions of his parole is one such judicial function. *Id.* Gwin alleges that Collins-Williams violated his rights by finding that Gwin had violated his parole and then causing a warrant to issue for his arrest. Collins-Williams was clearly performing a judicial function in her capacity as a parole officer. Therefore, she is entitled to quasi-judicial immunity.

More fundamentally, Gwin cannot challenge under § 1983 the validity of either arrest or the determination that his actions at TCIX violated his parole. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87.

Gwin contends that Defendant Jordan arrested him on October 6 without giving him a "lawful order" to leave the premises, in violation of Tennessee DOC policies. But he has not alleged that the resulting charges for impersonating a licensed professional and trespassing were resolved in his favor.

Nor can Gwin challenge the October 10 arrest for violating his parole and current confinement on that charge. A parolee's § 1983 claim based on an alleged improper revocation of his parole "necessarily implies the invalidity of his confinement" and therefore requires the parolee to first demonstrate "that his parole revocation has been overturned" by a state court or a federal

9

court in a habeas corpus petition. *Norwood v. Mich. Dept. of Corrections*, 67 F. App'x 286, 287 (6th Cir. 2003) (citing *Heck,* 512 U.S. at 486-87). Unless and until Gwin can show his parole revocation has been overturned, he may not seek relief under § 1983 for actions related to his October 10 arrest or confinement for that revocation.

To the extent that Gwin may be asking this Court to intervene in his criminal proceedings and order the charges dismissed, the Court cannot do so. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971) (internal quotation marks and citation omitted). Gwin does not allege the type of extraordinary circumstances that would permit the Court to become involved in his state-court criminal matters.

*Equal Protection*

Gwin alleges that Defendant Jordan violated his right to equal protection by selectively enforcing Tennessee law against him because of his race. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, § 1. To state a valid § 1983 claim under the

Equal Protection Clause, Gwin must allege that Defendant Jordan, a state actor, intentionally discriminated against him because of his race. *Davenport v. Simmons*, 192 F. Supp. 2d 812, 821 (W.D. Tenn. 2001) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). Specific to his claim that he was arrested based only on his race, Gwin "must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess,* 385 F.3d 923, 932 (6th Cir. 2004).

Gwin's allegations of discrimination on account of his race are conclusory and unsupported. He alleges nothing that would suggest Defendant Jordan treated him differently because of his race or selectively enforced the laws against him. These conclusory statements, without more, do not suffice to state a claim to relief. *See Twombly*, 550 U.S. at 555 & n.3.

*Retaliation*

In his first amended complaint, Gwin alleges that Defendant Jordan retaliated against him for "exercising his constitutional rights in acting as a Notary Public." (ECF No. 6 at PageID 58.) Specifically, he states Jordan arrested him to retaliate against Gwin for providing notary and legal assistance to state prison inmates. (*Id.*)

The Court reviews Gwin's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the

courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus–X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Gwin fails at the first element. Gwin's notary services and legal assistance to prisoners alone does not constitute protected conduct. *See Thaddeus-X*, 175 F.3d at 395. His assistance to prisoners would be protected only if his assistance were "necessary to vindicate [the prisoners'] right of access to the courts." *Id.* Gwin does not allege that his assistance was necessary to ensure the prisoners' access to the courts, and nothing in any of his pleadings suggests his assistance was necessary. He therefore fails to state a claim of retaliation.

*Taking of Personal Property, Failure to Investigate*

Gwin next alleges that Defendant Dotson and other unspecified MPD Detectives burgled $10,000 worth of personal property from his home after his October 10 arrest. Gwin alleges that a lieutenant at the Jail told him to contact a counselor about his property. (ECF No. 1 at PageID 21-22.) The counselor told Gwin he could file a grievance but only for incidents that occurred within the facility. (*Id.* at PageID 22.) Gwin still filed the grievance, which was denied because it related to events that occurred outside of the Jail. (*Id.*) Relatedly, he contends that Defendant Oldham did not allow him to file a police report regarding the taking of his property and failed to investigate his allegations. (*Id.* at PageID 24.)

The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is

12

available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Section 1983 therefore does not provide a remedy for a taking of property, even if the deprivation is intentional. *Id.* As the Sixth Circuit has noted, "the State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985)). Gwin's recourse for the alleged taking therefore lies in state court.[6]

Nor does Gwin have a cause of action against Defendant Oldham for failing to investigate or allow him to file a police report. Individuals have no constitutional right to file a police report. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Brittain v. Clemons*, No. 4:09CV–P123–M, 2011 WL 2471587, at *5 (W.D. Ky. 2011) (a plaintiff cannot force a criminal prosecution because private citizens, whether or not they are incarcerated, have no right to compel the state to criminally prosecute another person). Consequently, Gwin has no constitutional right that would have been violated by Oldham's refusing to file a police report for him.

Gwin's allegations that Oldham failed to investigate the detectives' taking of his property would establish only supervisory liability. *Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990). Section 1983 liability cannot be imposed under a theory of *respondeat superior*. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). A plaintiff must provide proof of personal involvement for a supervisor to incur personal liability. *Id.* "At a minimum, a § 1983 plaintiff must show that a

---

[6] That remedy is contained in Tennessee Code Annotated § 9-8-307, which permits claims for money damages for the taking of personal property against the State of Tennessee to be brought exclusively before the Tennessee Claims Commission. *See* Tenn. Code Ann. § 9-8-307(a)(1)(V). The statute also provides that state officers are absolute immune "from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." *Id.* § 9-8-307(h).

13

supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (internal quotation omitted). Gwin does not allege that Oldham himself took part in the taking of his property or that he acquiesced in their conduct. He therefore fails to state a claim for supervisory liability for failure to investigate.

*Denial of Access to Parolee Grievance Procedures*

Gwin alleges that Defendant Collins-Williams has "refused, denied or ignored" his request to file a parole grievance against the Tennessee Board of Parole employees that he insists assisted with his October 10 arrest and burglarized his apartment. (ECF No. 1 at PageID 23.) He asserts her refusal to provide him access to the grievance procedure for parolees violates his rights under the First and Fourteenth Amendments. (*Id.*)

"To establish a due process violation, a complainant must first show that he or she has a protected property or liberty interest in parole." *Settle v. Tennessee Dep't of Corr.*, 487 F. App'x 290, 290-91 (6th Cir. 2012) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991)). The Sixth Circuit has held that Tennessee law does not create a liberty interest in parole. *See Wright v. Trammell*, 810 F.2d 589, 590-91 (6th Cir. 1987); T.C.A. §§ 40-28-117(a). Because Gwin has no substantive liberty interest in parole, he has no due-process right on which to base his Fourteenth Amendment challenge. *See Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (affirming that "procedural statutes and regulations governing parole do not create federal procedural due process rights"). Nor does he have a right to contest the manner in which his parole is being carried out. To the extent Gwin wishes to challenge the taking of his property, Gwin's remedy lies with the state, as addressed above.

*Conspiracy*

Gwin broadly alleges that Defendant Warden Genovese conspired with Defendants Jordan, Bowman, and his parole officer Defendant Collins-Williams, to violate his right to vote. A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). Gwin's nonsensical claim fails this standard. He broadly alleges a conspiracy without any material factual support suggesting any Defendant conspired with another to deny his right to vote.

For all the foregoing reasons, Gwin's claims under § 1983 are subject to dismissal for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe

the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, the claims in the second amended complaint against former Governor Ned Ray McWherter and the Tennessee Board of Parole are hereby SEVERED from this case. The Clerk is DIRECTED to open a new civil case for those claims and to docket in that new case copies of the second amended complaint, (ECF No. 13), Gwin's motions to proceed *in forma pauperis*, (ECF Nos. 2 & 8), this Court's Order granting those motions (ECF No. 11), and this order. A further order concerning those claims will be issued after the new case is opened.

The Court DISMISSES all of Gwin's remaining § 1983 claims for failure to state a claim on which relief may be granted and for seeking monetary relief against a Defendant who is immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). Because all of the federal claims are being dismissed, the Court DECLINES to exercise supplemental jurisdiction over any claims arising under state law. Those state law claims are DISMISSED without prejudice to refiling in state court pursuant to 28 U.S.C. § 1367(c)(3).

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Gwin in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal

16

would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Gwin nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Gwin, this is the third dismissal of one of his cases as frivolous or for failure to state a claim.[7] This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

---

[7] Gwin previously filed *Bowers, et al. v. Rainey, et al.* No. 97-1227-JDT (W.D. Tenn. Oct. 28, 1997) (dismissed as frivolous), *aff'd*, No. 97-6400 (6th Cir. Dec. 21, 1998), and *Gwin v. Traughber, et al.*, No. 3:95-cv-00434 (M.D. Tenn. May 2, 1995) (dismissed as frivolous).

Consequently, Gwin is warned that he will be barred from filing any further actions *in forma pauperis* while he is a prisoner unless he is in imminent danger of serious physical injury. If any new civil complaint filed by Gwin is not accompanied by the entire $400 civil filing fee, the complaint must contain allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury. If the new complaint does not sufficiently allege imminent danger, it will be dismissed without prejudice; Gwin would then have an opportunity to file, within 28 days, a motion to re-open the case accompanied by the $400 civil filing fee.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE